FILED
CLERK

June 20, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

KRISTEN WILKIE,

        Plaintiff,                            **REPORT AND**
                                              **RECOMMENDATION**
                                              22-CV-00920 (JMA) (JMW)

        -against-

VILLAGE OF HEMPSTEAD, *et al*.

        Defendants.
------------------------------------------------------------------------X

REGINA PRUITTE,

        Plaintiff,                            **REPORT AND**
                                              **RECOMMENDATION**
                                              22-CV-03671 (JMA) (JMW)

        -against-

VILLAGE OF HEMPSTEAD, *et al*.

        Defendants.
------------------------------------------------------------------------X

JAYNE FISHER,

        Plaintiff,                            **REPORT AND**
                                              **RECOMMENDATION**
                                              22-CV-03805 (JMA) (JMW)

        -against-

VILLAGE OF HEMPSTEAD, *et al*.

        Defendants.
------------------------------------------------------------------------X

**A P P E A R A N C E S:**

Pablo A. Fernandez, Esq.
Charles H. Horn, Esq.
**The Russell Friedman Law Group, LLP**
400 Garden City Plaza, Ste 500
Garden City, NY 11530
*Attorneys for Plaintiffs*

Daniel Robert Lecours, Esq.
Harris Beach PLLC
677 Broadway, Ste 1101
Albany, NY 12207
*Attorney for Defendants Village of Hempstead,*
*Village of Hempstead Police Department,*
*Village of Hempstead Police Chief Paul Johnson,*
*Village of Hempstead Police Officer John Does #1-5*

William J Garry, Esq.
**Harris Beach PLLC**
333 Earle Ovington Blvd., Ste. 901
Uniondale, NY 11553
*Attorney for Defendants Village of Hempstead,*
*Village of Hempstead Police Department,*
*Village of Hempstead Police Chief Paul Johnson,*
*Village of Hempstead Police Officer John Does #1-5*

Anthony M. LaPinta, Esq.
Kyle O Wood, Esq.
**Reynolds, Caronia, Gianelli & La Pinta P.C.**
200 Vanderbilt Motor Parkway, Ste C-17
Hauppauge, NY 11788
*Attorneys for Defendant Village of Hempstead*
*Police Officer Jack Guevrekian*

**WICKS,** Magistrate Judge:

  Plaintiffs Kristen Wilke, Regina Pruitte, Jayne Fisher (collectively, "Plaintiffs") each bring actions against Defendants Village of Hempstead ("Hempstead"), Village of Hempstead Police Department ("HPD"), and Village of Hempstead Police Chief Paul Johnson ("Chief Johnson") (collectively the "Village Defendants"), and Defendant Jack Guevrekian. Plaintiffs assert five counts including: (a) claims for unlawful imprisonment, unlawful force, and deliberate

2

indifference to their rights in violation of the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution against Guevrekian pursuant to 42 U.S.C. § 1983; (b) claims for failure to protect and/or intervene in violation of the Fourth, Fifth, and Fourteenth Amendments against Chief Johnson, Hempstead, HPD, and John Does #1-5 pursuant to 42 U.S.C. § 1983; and (c) claims against Village Defendants pursuant to *Monell v. Dept. of Social Services*, 436 US. 658 (1978) ("*Monell* claims"). These claims all stem from the alleged sexual assaults committed by Guevrekian against Plaintiffs for the period of time from 2013 to 2019.

Before the Court are three identical motions for leave to amend complaints in each of the cases bearing the following docket numbers: 22-cv-0920 (DE 24), 22-cv-3671 (DE 19), and 22-cv-3805 (DE 20). The Village Defendants oppose these motions in a combined opposition. (22-cv-0920 (DE 21), 22-cv-3671 (DE 19), and 22-cv-3805 (DE 22).[1] Guevrekian did not file any opposition. The parties appeared before the undersigned for an oral argument on the motions on June 8, 2023. (DE 30.)

For the reasons below, undersigned respectfully recommends that the subject motions be granted in part and denied in part.[2]

---

[1] For ease of reference, citations to the docket ("DE") throughout this Report and Recommendation, unless otherwise noted, are to the filings in Docket No. 22-cv-0920.

[2] There is disagreement within this Circuit as to whether the denial of a motion to amend is considered dispositive matter. "Some courts 'have suggested that a magistrate judge's denial of a motion to amend a complaint should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive.'" *Thompson v. Spota*, No. 14-CV-2473 (JMA) (AKT), 2015 WL 4389931, at *1 (E.D.N.Y. July 15, 2015) (Azrack, J.) (citing *Tyree v. Zenk*, No. 05–CV–2998, 2009 WL 1456554, at *3 (E.D.N.Y. May 22, 2009)). Out of an abundance of caution, the undersigned proceeds by Report and Recommendation rather than by order. *See Domni v. Cnty. of Nassau*, No. 19-CV-00083 (JMA) (LGD), 2022 WL 16950055, at *1 (E.D.N.Y. Nov. 14, 2022) (Azrack, J.) (reviewing *de novo* the denial of a motion to amend "[f]or the avoidance of doubt"); *see also Lashley v. Sposato*, No. 13-CV-6343 (JMA) (SIL), 2016 WL 406351, at *1 n.1 (E.D.N.Y. Feb. 2, 2016) (Locke, M.J.) ("[D]enial of leave to amend is a dispositive decision at least in situations where the denial is premised on futility"), *report and recommendation adopted*, Order (Feb. 19, 2016).

I.  **RELEVANT BACKGROUND**

There are five cases currently on a joint discovery track before the undersigned: 20-cv 2117; 21-cv-4268, 22-cv-0920, 22-cv-3671, and 22-cv-3805. The Plaintiffs in the latter four have sought to amend their respective complaints. In the 21-cv-4268 action, plaintiff's counsel notified the Court on May 2, 2023, that plaintiff Tooher had passed away. (DE 43.) Accordingly, the motion to amend in that action was denied without prejudice to renewal following a motion, if any, pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure to substitute the deceased plaintiff. (Electronic Order dated May 2, 2023.)

Plaintiffs seek to add the following claims under the New York State Adult Survivors Act ("ASA") "(1) Negligence against the Village Defendants; (2) Negligence/Gross Negligent Hiring, Retention, Training and Supervision against Village Defendants; (3) Respondeat Superior against Village Defendants; (4) Assault against Defendant Guevrekian; (5) Battery against Defendant Guevrekian; and (6) False Arrest/False Imprisonment against Defendant Guevrekian." (DE 24-3 at 1.) Guevrekian was a Village of Hempstead Police Officer at all relevant times. Plaintiffs allege that Guevrekian sexually assaulted Plaintiffs at various times between 2013 to 2019. The following allegations are taken from the Plaintiffs' initial complaints.

A. *Plaintiff Kristin Wilke*

Sometime in 2019, Guevrekian called Plaintiff Wilke[3] and told her to meet him near Sacred Heart Academy on Cathedral Avenue in Hempstead, NY. (DE 1 at ¶ 34.) Guevrekian told her to get in the car and drove to a nearby location. (*Id.* at ¶ 36.) Guevrekian tried to "work out a deal" for sex with Wilke. (*Id.* at ¶ 36.) Guevrekian told Wilke that he would not arrest her

---

[3] Plaintiff Wilke's name appears on the docket and in the initial complaint as "Wilkie," however, the proposed amended complaint appears to correct that misspelling. (*See* DE 24-2 at 2.)

4

if she provided sex. (*Id.*) Guevrekian then became aggressive and demanded oral sex from Wilke. (*Id.* at ¶¶ 37-38.) Guevrekian then proceeded to physically grab Wilke and make her perform oral sex on him. (*Id.*)

### B. *Plaintiff Regina Pruitte*

Between 2006 and 2013, Guevrekian allegedly solicited oral sex and/or sex from Plaintiff Pruitte while on duty and in uniform except the first time when he was in plain clothes and in his personal vehicle. (22-cv-3671, DE 1 at ¶ 20.) The two would regularly meet and engage in oral sex and/or sex. (*Id.* at ¶ 22.) However, Pruitte alleges that sometime starting in 2013 and up to sometime in 2019, on several occasions, Guevrekian demanded Pruitte provide oral sex and/or sex under the threat of arrest or physical violence if she did not comply. (*Id.* at ¶¶ 23-28.) Pruitte was under the influence of drugs on some of the occasions. (*Id.*) On one occasion, when Pruitte did not comply with Guevrekian's attempts, she was arrested. (*Id.* at ¶ 29.)

### C. *Plaintiff Jayne Fisher*

Plaintiff Fisher alleges that starting sometime in 2010, Guevrekian would seek her out and attempt to engage her for sex and became increasingly aggressive. (22-cv-3805, DE 1 at ¶¶ 20, 23.) Sometime in 2019, Guevrekian arrested Plaintiff for possession, and took her to the precinct for processing. (*Id.* at 25.) When Plaintiff requested to use the bathroom, Guevrekian followed her and forced her to undress and use the bathroom in front of him while he watched. (*Id.*)

Later that same year, Guevrekian was driving a black sedan and allegedly approached Fisher while she was walking in the street. (*Id.* at ¶¶ 26 -27.) He ordered her to get inside the car otherwise he would lock her up. (*Id.* at ¶¶ 26 -27.) Guevrekian drove Fisher to a parking lot and ordered her to give him oral sex under the threat of arrest. (*Id.* at ¶ 28.)

5

**D.  *Village Defendants***

Plaintiffs further allege that Defendants Chief Johnson, Hempstead, and HPD knew of prior instances of misconduct on behalf of Guevrekian, and other HPD Officers, yet failed to take any action to prevent future instances of misconduct, essentially countenancing their behavior.  (DE 1 at ¶ 58.)  Plaintiff's assert that Guevrekian's conduct well-known within the department, and other police officers engaged in similar conduct.  (*Id.* at ¶¶ 65-68.)  In late 2004, a complaint was filed with HPD and the Nassau County District Attorney's office about an incident that allegedly occurred when Guevrekian responded to a 911 call by a female who was seeking assistance regarding a domestic violence incident.  (*Id.* at ¶ 69.)

The complaint allegedly stated that Guevrekian made inappropriate comments to the female in question, asked her to lift her shirt, and then rubbed his body against hers.  (*Id.* at ¶ 70.)  The next day, Guevrekian returned to the female complainant's home, hugged and kissed her, and told her that he "would like to take her out sometime."  (*Id.* at ¶¶ 70-71.)  Plaintiffs assert that the Village Defendants failed or refused to adequately investigate Guverekian's actions or take any remedial action.  (DE 1 at ¶ 73.)

## II.  <u>LEGAL STANDARD</u>

Motions to amend pleadings are governed by Federal Rule of Civil Procedure 15(a).  Pursuant to Fed. R. Civ. P. 15(a)(2), which provides that "[t]he court shall freely give leave when justice so requires."  Generally, "[u]nless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend."  *Adlife Mktg. & Commcns Co. v. Best Yet Mkt., Inc.*, No. 17-CV-02987 (ADS) (ARL) 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

The party opposing the proposed amended pleading has the burden of establishing that amendment would be prejudicial or futile. *Jipeng Du v. Wan Sang Chow*, No. 18-CV-01692 (ADS) (AKT) 2019 WL 3767536, at *4 (E.D.N.Y. Aug. 9, 2019) (internal quotations and citations omitted). The moving party must attach the proposed amended complaint to the motion, like was done here, specifying the new claims and/or parties intended to be added. *See Nabatkhorian v. County of Nassau*, No. 12-CV-1118 (JS) (GRB) 2012 WL 13113646, at *1 (E.D.N.Y. Aug. 9, 2012).

The Second Circuit has clarified the standard to be applied by the District Courts in considering motions for leave to amend dependent upon the timing of the proposed amendment:

> The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought. At the outset of the litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission. After that period ends—either upon expiration of a specified period in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A)—the plaintiff must move the court for leave to amend, but the court should grant such leave "freely . . . when justice so requires" pursuant to Rule 15(a)(2). This is a "liberal" and "permissive" standard, and the only "grounds on which denial of leave to amend has long been held proper" are upon a showing of "undue delay, bad faith, dilatory motive, [or] futility." The period of "liberal" amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up [to] a showing of the "good cause" that is required to modify a scheduling order under Rule 16(b)(4).

*Sacerdote v. NYU*, 9 F.4th 95, 115 (2d Cir. 2021).

Here, the subject motions were filed within the time set by the Court. Accordingly, the subject motions are analyzed under more permissive Rule 15(a)(2) standard.

7

### III. DISCUSSION

Rule 15(a)(2) dictates that the Court "should freely give leave to amend when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). "Unless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Commcns Co. v. Best Yet Mkt., Inc.*, No. 17-CV-02987 (ADS) (ARL), 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). Generally, "[w]ith respect to the Rule 15(a) factors, '[t]he party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile.'" *Joinnides v. Floral Park-Bellerose Union Sch. Dist.*, No. 12-CV-5682, 2015 WL 1476422, at *9 (E.D.N.Y. Mar. 31, 2015). As evident from their papers, and as articulated at oral argument, Defendants do not argue prejudice or undue delay. That is unsurprising given that the proposed amendments are based on a recently enacted law that revives certain categories of causes of action that were previously time-barred.

Defendants instead rest their opposition solely on the alleged futility of two of the proposed amendments. (DE 26-3 at 1.) In determining whether an amendment is futile, courts consider whether a plaintiff's proposed claims would survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Bodenmiller v. Cnty. of Suffolk*, No. 20-CV-0414 (JMA)(ARL), 2021 WL 4555884, at *4 (E.D.N.Y. Aug. 30, 2021), *report and recommendation adopted*, 2021 WL 4553177 (E.D.N.Y. Oct. 5, 2021) ("An amendment is considered futile if the proposed claim would not survive a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6).") (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000)). Plaintiffs' claims must therefore be construed in a light most favorable to Plaintiffs, and Plaintiffs "must merely show that [they] ha[ve] at least colorable grounds for relief" to overcome

objections of futility. *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09-CV-1608 (RJH) (JCF), 2010 WL 1327921, at *3 (S.D.N.Y. Apr. 5, 2010)).

Specifically, Defendants oppose the addition of (1) Plaintiff's respondeat superior claims against the Village Defendants that are premised on the alleged sexual assaults perpetrated by Guevrekian, and (2) Plaintiffs' false arrest and/or false imprisonment claims against Guevrekian. (DE 26-3 at 1.) The Court addresses each in turn below.

### A. *Respondeat Superior*

Plaintiffs seek to utilize the doctrine of respondeat superior (Count VIII) to hold the Village Defendants liable for Guevrekian's alleged actions. (DE 24-2 at ¶¶ 199-201.) This cause of action is also linked to the recently enacted ASA, see *infra* III.B, and stems from Guevrekian's alleged sexual assaults against Plaintiffs. (*Id.*) "Under New York law, the doctrine of respondeat superior renders an employer vicariously liable for a tort committed by an employee while acting within the scope of his employment." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995).

Plaintiffs state that whether certain actions taken by an employee fall within the scope of that employee's employment is a fact-intensive inquiry typically reserved for a jury. (DE 24-3 at 3-4 (citing *Riviello v. Waldron*, 47 N.Y.2d 297, 302–303, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979); *Matter of Williams v. City of New York*, 64 N.Y.2d 800, 802, 486 N.Y.S.2d 918, 476 N.E.2d 317 (1985)).) That is true. "Whether an employee was acting within that scope at a particular time requires a fact-intensive inquiry." *Girden v. Sandals Int'l*, 262 F.3d 195, 205 (2d Cir. 2001) (citing *Riviello*, 47 N.Y.2d 297 at 303.). However, every rule has its exceptions. And

9

although, "[t]he ultimate determination of this issue is ordinarily for the jury . . . it can be made as a matter of law in some instances." *Id*.

Defendants correctly argue that under New York law, an employee's sexual assault is considered outside the scope of an employee's duties and does not form the basis for vicarious liability. (DE 26 at 3.) Here, Plaintiffs allege that Guevrekian ordered them to get in his car and ordered them to engage in sex and/or perform oral sex on him under the threat of arrest and/or physical violence. Guevrekian's actions were based on his personal motive, and a lucid departure from his duties as a police officer rather than in furtherance of those duties. *Cf. Doe v. Poly Prep Country Day Sch.*, No. 20-CV-04718 (DG) (PK), 2022 WL 4586237, at *7 (E.D.N.Y. Sept. 29, 2022) ("Plaintiff's contention that sexual abuse was a feature, not a bug, of the system at Poly, . . . does not save his assault and battery claims. Although Plaintiff alleges that adults in positions of power at Poly were aware of, tolerated and covered up rampant and foreseeable sexual abuse at the school, [these references] to Defendant's culture do not amount to plausible allegations that Miller's alleged assaults furthered [Defendant's] business interests or constituted an actual responsibility Miller had to Defendant; nor do they create a reasonable inference that [Defendant's] business included sex crimes." (internal quotation marks omitted))

The complaints are also devoid of any specific factual allegations that would indicate Village Defendants were aware that Guevrekian had previously ordered civilians to perform sex and/or oral sex under the threat of arrest or physical violence. *See Richardson v. City of New York*, 326 F. App'x 580, 582 (2d Cir. 2009) (summary order) (finding that notwithstanding the probation officer instigating thirty five sexual relations with a minor, the state-law claims for vicarious liability failed). Even if the 2004 complaint could suffice to show that the Village Defendants knew or should have known about Geuvrekian's tendencies, that is more relevant to

10

Plaintiffs' state-law negligence claims.[4] *See Richardson v. City of New York*, 326 F. App'x 580, 582 (2d Cir. 2009) (summary order) ("Richardson's state-law negligence claims also fail because he has failed to show the City knew or should have known about Waite's alleged propensity to impose herself sexually on minors she was supervising.").

Indeed, "[i]n many New York cases, courts have held as a matter of law that an employer was not responsible for a sexual assault committed by an employee because the attack was outside the scope of the employee's duties." *Girden*, 262 F.3d 195 at 205–06 (collecting cases). And "it is well-settled in the Second Circuit that employers are not liable to plaintiffs for sexual assaults under a theory of respondeat superior since sexual misconduct is necessarily outside the scope of employment." *Doe v. New York City Dep't of Educ.*, No. 21-CV-4332, 2023 WL 2574741, at *5 (E.D.N.Y. Mar. 20, 2023) (dismissing sexual assault claims against the New York City Department of Education that were based on a respondeat superior liability); *Doe v. City of New York*, No. 18-CV-670 (ARR) (JO), 2018 WL 3824133, at *6 (E.D.N.Y. Aug. 9, 2018) (dismissing "respondeat superior claims" because "[t]he City cannot be held vicariously liable for the sexual assaults Hall and Martins allegedly committed against Doe, even though the detectives were then on duty").

Further, Plaintiffs do not cite any authority to the contrary.[5] That is, there is an absence of any authority in New York where the doctrine of respondeat superior liability was

---

[4] The Court notes that the assertion of Plaintiffs' respondeat superior claim appears to be inconsistent with their assertion of negligent/gross negligent hiring, retention, training and supervision claim (Count 7). *See Marotta v. Palm Mgmt. Corp.*, No. 05-CIV-10688 (LTS)(HBP), 2009 WL 497568, at *4 (S.D.N.Y. Feb. 25, 2009) ("[L]iability for negligent hiring, retention, training or supervision typically arises only *when an employee acts outside of the scope of his employment and vicarious liability cannot obtain*." (emphasis added)).

[5] At Oral Argument, Plaintiffs represented that they were aware of caselaw applying New York law where the doctrine of respondeat superior has been applied to hold an employer liable for sexual assaults committed by an employee. (DE 30.) Thus, the Court gave Plaintiffs an opportunity to file a

11

successfully applied to hold an employer liable for a sexual assault committed by their employee. *See Doe v. New York City Dep't of Educ.*, No. 21-CV-4332, 2023 WL 2574741, at *5 (E.D.N.Y. Mar. 20, 2023) ("No decision in New York has been cited to date in which the doctrine of respondeat superior was held to apply to sexual assault" (quoting *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014)); *C.Q. v. Est. of Rockefeller*, No. 20-CV-2205 (VSB), 2021 WL 4942802, at *3 (S.D.N.Y. Oct. 21, 2021) (same). Instead, Plaintiffs simply argue that they have sufficiently alleged that the relevant actions committed by Guevrekian were committed in the furtherance of the Village's business and within the scope of his employment. (DE 25 at 1.) Such conclusory statements are insufficient.

Plaintiffs also rely on inapposite cases. In *Rohan*, the Appellate Division expressly stated given that the "bus driver's acts of sexual abuse and molestation were a clear departure from the scope of his employment, committed solely for personal reasons, and unrelated to the furtherance of his employer's business, neither the bus company nor the School District can be held vicariously liable for his acts." *Doe v. Rohan*, 17 A.D.3d 509, 512, 793 N.Y.S.2d 170 (2d Dep't 2005) (affirming trial court's finding that defendant was not liable for intentional tort claims under the doctrine of respondeat superior). And *Schilt*, another case relied upon by Plaintiffs, did not involve a sexual assault. *See Schilt v. N.Y.C.T.A.*, 304 A.D.2d 189, 759 N.Y.S.2d 10 190 (1st Dep't 2003) ("alleging negligence on the part of defendants.").

The Court finds that, as a matter of law, Plaintiff's respondeat superior claim against Village Defendants (Count VIII) fails to put forth a colorable argument, and thus, is futile. Accordingly, the undersigned respectfully recommends that this branch of Plaintiffs' motion to amend be denied.

---

supplemental letter identifying those cases. (DE 30.) The supplemental filing failed to identify any relevant cases concerning New York law. (*See* DE 33.)

B. *False Arrest and/or False Imprisonment*

Plaintiffs seek to assert claims for false arrest and/or false imprisonment against Guevrekian. (DE 24-2 at ¶¶ 211-212.) A plaintiff must show the following elements to establish a false arrest[6] or false imprisonment claim pursuant to New York Law: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Doe v. City of New York*, No. 18-CV-670 (ARR) (JO), 2018 WL 3824133, at *4 (E.D.N.Y. Aug. 9, 2018). An arrest based on probable cause is considered "privileged," however it is the defendant's "burden of proving that probably cause existed for the plaintiff's arrest." *Id*. An arrest without a warrant is "presumed to be unlawful, and the defendant has the burden of proving legal justification as an affirmative defense," thus mere allegations that the plaintiff was arrested "without just cause of provocation" are sufficient at the pleading stage. *Id*. (internal quotation marks omitted).

Plaintiffs seek to revive these claims pursuant to the ASA -- a New York statute that was enacted in 2022. The ASA creates a 12-month revival window beginning on November 24, 2022 and running until November 24, 2023 for certain types of claims. *See* N.Y. C.P.L.R. § 214-J (2022). The ASA provides in relevant part:

> [E]very civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was eighteen years of age or older . . . which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than one year and six months after the effective date of this section.

---

[6] False arrest is a form of false imprisonment. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("The common law tort of false arrest is a species of false imprisonment[.]").

13

N.Y. C.P.L.R. § 214-j; *see also Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 185507, at *10 (S.D.N.Y. Jan. 13, 2023) (holding that the ASA is constitutional).

The Village Defendants contend that Plaintiffs seek to assert claims directly against them for direct and vicarious liability for Guevrekian's alleged false arrest/imprisonment. (DE 26-3 at 5.) The parties do not dispute the elements of these claims. Rather, Village Defendants query whether the ASA even permits revival of false arrest/imprisonment claims. Village Defendants argue that since the ASA only covers conduct that constitutes a sexual offense as defined in N.Y. Penal L. § 130, false imprisonment and false arrest, which are not such offenses, cannot be asserted under the ASA. (DE 26-3 at 5.) Village Defendants further aver that since these claims are not covered by the ASA, they are time-barred because Plaintiffs failed to comply with the statutory prerequisites of N.Y. Gen. Mun. Law §§ 50-e, 50-h, and 50-i. (DE 26-3 at 5.) Village Defendants do not otherwise appear to dispute that if the claims are covered by the ASA, they would be timely.

On the other hand, Plaintiffs argue that the Village Defendants' proffered reading of the ASA is incorrect since the statute, by its plain language, revives "*every civil claim or cause of action* brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered *as a result of* conduct which would constitute a sexual offense." N.Y. C.P.L.R. § 214-j (emphasis added). Thus, the ASA covers civil claims related to intentional torts -- false arrest/imprisonment -- that were suffered "as a result of conduct" that otherwise would be a sexual offense under N.Y. Penal L. § 130.

"Absent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law." *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000). "As a federal court applying state law, we are generally obliged to

follow the state law decisions of state intermediate appellate courts . . . in the absence of any contrary New York authority or other persuasive data establishing that the highest court of the state would decide otherwise." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005) (quoting *Pentech Int'l, Inc. v. Wall St. Clearing Co.*, 983 F.2d 441, 446 (2d Cir. 1993)).

The parties do not offer any authority, caselaw or otherwise, specifically interpreting the ASA in relation to parties' dispute. However, each side offers a case involving the Child Victims Act ("CVA"), a statute that accomplished for children under the age of eighteen, what the ASA does for those over the age of eighteen. *See* N.Y. C.P.L.R. § 214-g. Given that the relevant statutory language in the CVA is identical to that of the ASA, how the CVA has been interpreted by New York courts is helpful guidance. *See id.* (the CVA revives "*every civil claim or cause of action* brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered *as a result of conduct* which would constitute a sexual offense" (emphasis added)).

Plaintiffs cite to a decision by the Supreme Court, Appellate Division, Fourth Department, New York by way of example for the proposition that N.Y. C.P.L.R. § 214-j extends to claims that arise out of conduct that constitutes a sexual offense under the penal law and not just conduct that constitutes such offenses. *See Shapiro v. Syracuse University*, 208 A.D.3d 958, 173 N.Y.S.3d 958 (4th Dep't 2022). The plaintiff in *Shapiro* had brought a personal injury action pursuant to the CVA. *See id.* at 960-61. In relevant part, the trial court had granted defendants Camp Greylock, Inc. ("Greylock") motion for summary judgment to dismiss the first and second counts of the plaintiffs' amended complaint on statute of limitations grounds. *Id.* at 958, 961.

15

On appeal, the Appellate Division reversed and found that the "CVA revival statute applies" to the first and second causes of action against Greylock. *Id.* at 961. Notably, these causes of action were Negligence, Gross Negligence, Recklessness, and Failure to Exercise a Reasonable Standard of Care (first cause of action) as well as Negligent Hiring, Negligent Retention, and Negligent Training, Negligent Supervision (second cause of action). *See generally* Complaint, *Shapiro v. Syracuse Univ.*, 176 N.Y.S.3d 499 (2021) (No. 24). The *Shapiro* Court noted that "it is undisputed that the claims against Greylock *arise from sexual abuse that occurred.*" 208 A.D.3d at 961.

This decision is at odds with Defendants' proffered interpretation of the statute. If the CVA revived claims of negligence, it follows that the ASA would revive an intentional tort, such as false imprisonment and/or arrest. The elements of, *inter alia*, Negligent Hiring, are not synonymous with conduct that constitutes an offense under N.Y. Penal L. § 130. Yet, the claim was revived by the CVA. There is then no reason that an intentional tort like false imprisonment, which more obviously arises from the conduct that constitutes an offense under N.Y. Penal L. § 130, would not be revived by the ASA.

Defendants point to *Rapp* to support their interpretation of N.Y. C.P.L.R. 214-j, that a claim must involve conduct that itself is a sexual offense itself in order to be revived. *See Rapp v. Fowler*, No. 20-CV-9586 (LAK), 2022 WL 1997176 at *3 (S.D.N.Y. June 6, 2022). In *Rapp*, the court held that the CVA did not revive the plaintiff's common law assault claim. *Id*. The court noted that since common law assault "is not a sexual offense . . . as defined in the Penal Law, the Child Victims did not revive such claims." *Id*. The conclusion certainly supports Defendants' reading of the ASA. However, it is supported by little reasoning and appears at odds with the New York authority on point. Nonetheless, the Court finds the state intermediate

16

appellate court's revival of a claim that is not a sexual offense under the CVA to be a more persuasive indicator of how the highest court in the state would interpret the ASA.

Moreover, the legislative history of the ASA offers further support for Plaintiff's proffered interpretation of the statute. *See Trump*, 2023 WL 185507, at *7 (noting that courts may consider "such historical or other facts as are reasonably within the scope of judicial cognizance," *inter alia*, "statements by bill sponsors" when considering the intention of the state legislature). Senate Bill 66 eventually became the ASA, and the legislative committee report accompanying the bill stated in relevant part that the ASA "would create a one-year window for the revival of otherwise time-barred civil claims *arising out of sexual offenses* committed against people who were 18 or older at the time of the conduct." *Id.* (citing N.Y. Comm. Rept., 2021 NY S.B. 66 (NS)) (emphasis added)).

Plaintiffs note that at the time of the alleged incidents, Plaintiffs were each over the age of 18 and were victims of sexual assaults perpetrated by the Defendants. (DE 24-3 at 2.) The parties also do not appear to dispute that the underlying conduct of non-consensual sex and/or oral sex that Plaintiffs allege, if true, would constitute a sexual offense under N.Y. Penal L. § 130, "which includes, [*inter alia*] rape, statutory rape, forcible touching," and criminal sexual acts. *See Doe v. New York City Dep't of Educ.*, No. 21-CV-4332, 2023 WL 2574741, at *4 (E.D.N.Y. Mar. 20, 2023); *see also* N.Y. Penal L. § 130. To the extent Plaintiffs allege that Defendant Guevrekian falsely arrested/imprisoned them *during* his assaults, those particular claims arise from conduct that constitutes a sexual offense under N.Y. Penal L. § 130.

Thus, at this threshold pleading stage, Plaintiffs raise a colorable argument, and their claim is not futile. Accordingly, the undersigned respectfully recommends this branch of Plaintiffs' motion to amend be granted.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Plaintiffs' motion for leave to amend be granted except to the extent Plaintiffs seek to add a respondeat superior claim against Village Defendants (Count VIII).

Plaintiffs are directed to file the amended complaint on ECF within 14 days of the District Judge's decision on this Report and Recommendation if Plaintiffs are granted leave to amend the complaint.

Once the amended complaint is filed, it shall serve as the operative pleading in this matter upon its filing. Defendants' time to respond to or otherwise move against the complaint shall be on or before 14 days after the amended complaint is filed.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.

Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the

18

magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
June 20, 2023

**Respectfully recommended:**

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge
